```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA


TIDEWATER INC. and SUBSIDIARIES        *    CIVIL ACTION
and TIDEWATER FOREIGN SALES
CORPORATION


V.                                     *    NO. 06-875


UNITED STATES OF AMERICA               *    SECTION "F"
```

ORDER AND REASONS

Before the Court are cross-motions for summary judgment, and the government's motion to dismiss the plaintiffs' claims related to the 1998 tax year. For the following reasons, the plaintiffs' motion is GRANTED and government's motions are DENIED.

Background

Tidewater, Inc. owns a fleet of ocean-going vessels used for exploration, production, and development in the offshore energy and petroleum industries. Tidewater leases its vessels to Tidewater Marine International, Inc. and other wholly-owned vessel operating companies, which, in turn, enter time charters with third-party customers. On its 1998-2000 income tax returns, Tidewater treated the time charters as mixed lease/service agreements and, pursuant

1

to the Foreign Sales Corporation Act (FSC), formerly codified in 26 U.S.C. §§ 921-927, paid a tax-deductible FSC commission to Tidewater FSC for the lease income.[1] The Internal Revenue Service challenged Tidewater's FSC deduction, asserting that time charters are service agreements, not leases, and, therefore, the income does not qualify for FSC tax treatment. Tidewater paid the asserted tax deficiency and filed administrative refund claims with the IRS, and, subsequently, filed this lawsuit.

The plaintiffs now move for summary judgment regarding the claim that the Internal Revenue Service erroneously assessed and collected from Tidewater, Inc. $8,990,535 between the years of 1998 to 2000. The Government also moves for summary judgment, asserting that Tidewater is not entitled to tax deductions claimed under the FSC, because the Act does not apply to the income derived from time charters of ocean-going vessels. According to the government, because time charters are service agreements, they do not constitute a lease of "export property," as required under the FSC for favored tax treatment. In addition, the government moves to dismiss Tidewater's claims arising from the 1998 tax year, because this lawsuit was not filed within the two-year statute of limitations in 26 U.S.C. § 6532(a)(1).

---

[1] The Foreign Sales Corporation Act was repealed in 2000.

I. Motion to Dismiss

A.

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a dismissal for lack of subject-matter jurisdiction. See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003). A court may find it lacks subject-matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion to dismiss and must establish that jurisdiction exists. Id. at 161. The plaintiffs assert this Court has jurisdiction under 28 U.S.C. § 1346(a)(1), which allows a tax claimant to sue the United States in federal court within two years of the IRS's rejection of the taxpayer's administrative claims. 26 U.S.C. § 7422(a), 26 U.S.C. § 6532(a)(1). The government contends that Tidewater filed this lawsuit more than two years after the IRS disallowed Tidewater's 1998 refund claims, and, therefore, this Court lacks jurisdiction over those claims.[2]

---

[2] Tidewater filed a complaint in federal court related to tax years 1998, 1999, and 2000 on February 21, 2006. Tidewater filed a second claim with additional allegations pertaining to the 1998 tax year on March 21, 2007. The parties do not dispute that the claims related to tax years 1999 and 2000 are timely.

B.

On November 26, 2001, Tidewater timely filed an administrative refund claim with the IRS pertaining to its 1998 tax assessment. On July 21, 2003, the IRS sent Tidewater an examination report that, in substance, rejected Tidewater's interpretation of the FSC. By a second letter, dated July 30, 2003, the IRS informed Tidewater that it had examined the 1998 refund claim and proposed full disallowance. The letter advised Tidewater of its right to seek a meeting with IRS staff or file a formal protest, stating that, "[i]f you don't respond [within 30 days], we will process your case based on the adjustments shown in the enclosed examination report." On October 1, 2003, Tidewater submitted a letter protesting the Service's proposed disallowance.

The first question before the Court is whether the July 30, 2003 IRS notice letter constituted a final agency decision on Tidewater's November 26, 2001 administrative refund claim. The Internal Revenue Code does not mandate any particular format for the IRS to reject tax claims, but provides simply that the limitations period begins to run from the mailing of the "notice of disallowance" of the claim. In Smith v. United States, 478 F.2d 398, 399-400 (5th Cir. 1973), the Fifth Circuit held that a notice of disallowance from the IRS commences the running of the two-year limitations period under § 6532(a), as long as it adequately notifies the taxpayer of the tax year involved, the type of tax, the amount of the refund sought, and that there has been a disallowance. However, the Fifth Circuit has never addressed the

question of whether a letter similar to the July 30, 2003 "proposed" disallowance triggers the two-year period. Unlike the taxpayer in the present case, the taxpayers in Smith conceded that they received formal notices of disallowance; they argued only that the notices were deficient for technical reasons, and that the IRS never sent a thirty-day letter prior to issuing the notice of disallowance. The court of appeals dismissed those arguments as meritless. 478 F.2d at 399-400.

Only a small number of courts have accepted that less than an official notice of disallowance can start the running of the limitations period. See, e.g., Gervasio v. United States, 627 F. Supp. 428 (E.D. Ill. 1986)(notice of claim disallowance was provided when agent refused to accept taxpayer's claim and mailed it back to the taxpayer); Register Publishing Co. v. United States, 189 F. Supp. 626 (D. Conn. 1960) (mailing of a thirty-day letter and accompanying examination report that stated, in substance, the refund claims were disallowed constitutes formal disallowance); Block-Southland Sportswear, Co. v. United States, 1972 WL 455 (E.D.N.C. 1972) (thirty-day letter does not constitute a decision on the taxpayer's claim because there was no reference to an examiners report); Stephens v. United States, 216 F.Supp. 854 (D. Ark. 1963) ("Although the 30-day letter did not advise plaintiff in so many words that his claims for refund had been denied, nevertheless it did so by necessary implication when read in connection with the accompanying Internal Revenue Agent's report, which recommended disallowance of the claims in full....").

Notably, the issue in those cases was whether a thirty-day letter was a disallowance that triggered the taxpayers authority to bring a case to federal court within six months of filing an administrative claim. See 26 U.S.C. § 6532(a). Those cases did not address whether a thirty-day letter should be held to trigger the two-year limitation period.[3]

The Court finds that the Service's July 30, 2003 letter to Tidewater did not trigger the running of the two-year limitations period for the 1998 refund claim. The requirement that the IRS must issue a notice of disallowance exists not only to inform taxpayers that their claims were considered and rejected, but also to transparently and unambiguously establish a date from which the statute of limitations begins to run. Formal notices of claim disallowance also provide the benefit of informing taxpayers of

---

[3] Under the applicable statute of limitations in 26 U.S.C. § 6532(a)(1), a taxpayer may not sue the federal government to recover taxes paid until at least six months after filing the required administrative claim with the IRS. If the IRS disallows the administrative claim within six months, the taxpayer may file in federal court immediately, but in no case later than two years from the disallowance. See 26 U.S.C. § 6532(a)(1).
When the Service determines an administrative refund claim lacks merit, it generally will send the taxpayer a preliminary or "thirty-day letter." According to Treasury regulations, a thirty-day letter is: "a form letter which states the determination proposed to be made. It is accompanied by a copy of the examiner's report explaining the basis of the proposed determination. It suggests to the taxpayer that if the taxpayer concurs in the recommendation, he or she indicate agreement by executing and returning a waiver or acceptance. The preliminary letter also informs the taxpayer of appeal rights available if he or she disagrees with the proposed determination. If the taxpayer does not respond to the letter within 30 days, a statutory notice of deficiency will be issued or other appropriate action taken...." 26 C.F.R. § 601.105.

their right to seek judicial review and the time period in which a suit must be filed.[4] The government's position, if accepted, would lead to opportunities for confusion and litigation over whether and when a proposed disallowance, thirty-day letter, examination report, or other informal rejection constitutes the "claim disallowance" that triggers the limitations period.

Furthermore, the Court notes that this is not a case where the taxpayer had actual notice that the IRS rejection was full and final, but, rather, merely proposed. In fact, the July 30, 2003 letter invited Tidewater's response. Tidewater's 1998 refund claim concerned an issue that the IRS had historically taken differing positions on. The monetary value of the disputed tax deduction was significant, and the parties on both sides were experienced with the administrative procedure of tax refund claims. The July 30, 2003 proposed disallowance was on its face and by its terms inconclusive, and Tidewater was entitled to receive, at some point, the requisite notice of full disallowance stating that the taxpayer had two years to file in federal court.

---

[4] For example, and not surprisingly, the letters the IRS sent to Tidewater on August 26, 2005, December 5, 2005, and January 9, 2006 all include the language: "This is your legal notice that we have fully disallowed your claim. If you wish to bring suit or proceedings for the recovery of any tax . . . you may do so by filing suit with the United States District Court . . . within 2 years from the mailing of this letter."

## II. Cross-Motions for Summary Judgment

### A.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted).

The tax issues before the Court are presented on cross-motions for summary judgment. Each side has the burden of producing evidence to support its motion, which can be done by tendering depositions, affidavits, and other competent evidence. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). A case may not be appropriate for summary disposition even if the parties have filed cross-motions for summary judgment. The Court must still examine the record to determine whether there are genuine issues of material fact for trial. Schlytter v. Baker, 580 F.2d 848, 849 (5th Cir.1978). Finally, in evaluating a summary judgment motion, the court must read the facts in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.

B.

The FSC provisions of the Internal Revenue Code, before their repeal, permitted U.S. firms engaged in the sale or lease of "export property" to divert a portion of this income to specially qualified subsidiary corporations organized abroad as foreign sales corporations, or FSCs. Commissions paid to FSCs are tax deductible to the domestic firm and taxable to the FSC at a favored rate. See 26 U.S.C. §§ 921-927.

Under 28 U.S.C. § 972(a)(1), property counts as "export property" if it is: (1) manufactured in the United States; (2) has a foreign content not in excess of 50% of its fair market value; and (3) is held primarily for sale, lease, or rental for direct use or consumption outside the United States. The parties here agree that Tidewater's support vessels were manufactured in the United States and meet the less-than-50% foreign content rule. The only dispute is whether the vessels are held "primarily" for lease.

Tidewater uses a two-step transaction model for providing support vessels to end-users. First, Tidewater leases the support vessels to a subsidiary, Tidewater Marine International, Inc.[5] Second, Tidewater Marine International enters into "time charters" with unrelated third parties.[6] Neither side denies that Tidewater

---

[5] Tidewater owns numerous vessel operating companies that perform the same function as Tidewater Marine International; the Court merely uses Tidewater Marine International as an example.

[6] A time charter is an arrangement whereby the charterer provides a vessel, captain, crew, and other agreed-upon necessities for a definite period of time. The charteree is free to use the vessel for any appropriate purpose within the contract

holds the vessels "primarily" for lease (indeed, Tidewater derives income from the vessels only by leasing them to its subsidiaries), but the government takes the view that, under the so-called "related-lessee exception" in § 927(2)(A), property leased by a corporation to its subsidiary is not "export property" unless the property is then "held for sublease, or is subleased" by the subsidiary to an unrelated party. See 26 C.F.R. § 1.927(f)(2). Notably, § 1.927(f)(2) does not by its text require that the subsidiary hold the property "primarily" for sublease: only that it be subleased. In this case, the vessels are subleased to unrelated parties under time charter arrangements. It does not matter whether time charters are "primarily" subleases or "primarily" service contracts; they are, in part, quite simply and realistically, subleases, and that is sufficient to bring the vessels into the definition of export property.[7]

Under 28 U.S.C. § 924(a)(2), income derived from "the lease or

---

period but does not exercise control or domination over the vessel as an owner.

[7] The government argues that a time charter is purely a service contract, not a lease of property, because, for example, the purported service recipients do not control or have an economic interest in the vessels. Further, the government has presented evidence that the per-day price of the time charter is not correlated to the cost of the vessel, but, rather, fluctuates with economic conditions of the times (somehow indicative of a service contract rather than a lease of property). Tidewater responds quite correctly that the lessee has sole use of the vessels and that the lessee bears certain risks of loss or damage to the vessel, persuading this Court that time charters are more like a lease. However, while these are relevant considerations, the Court is simply not required to make an all-or-nothing determination under the FSC. There is no question that time charters have elements of both a lease and a service agreement.

rental of export property for use by the lessee outside the United States" qualifies for the preferential FSC tax treatment. The statute and regulations clearly allow corporations to take FSC deductions on the lease income from mixed lease/service contracts. See 26 U.S.C. § 924(a), 26 C.F.R. § 1.924(a). In fact, under 26 C.F.R. § 1.924(a)-1T(d)(3), if the services provided as part of a mixed lease/service contract are related and subsidiary to the sale of export property, the income from the service aspect of the contract will also qualify for FSC benefits.[8] Based on the bifurcation provisions in the statute, Tidewater contends that the lease income from the time charters therefore qualifies as a matter of law for FSC benefits. The Court agrees. Furthermore, Tidewater points out that, before it began using time charters in 1996, it used a two-contract system in which Tidewater leased a vessel to an end-user under one contract, and Tidewater Marine International then sold services to the same end-user in a different contract, creating two separate sources of income. When Tidewater adopted its present system in 1996, end-users continued to receive the same vessels and the same services as before, and Tidewater continued to segregate the income as "lease income" and "service income" in its accounting procedures. The lease income was paid to Tidewater, which then attributed its tax treatment under FSC.

---

[8] Because Tidewater did not claim FSC deductions for income derived from the service aspect of the time charters, the Court is not presented with a question of fact in the summary relief context as to whether the services were related and subsidiary to the lease.

11

The government does not dispute that, under the two-contract model, income from the lease contract was deductible under 28 U.S.C. § 924(a). With respect to the time-charter model, however, the government maintains that the support vessels are never "subleased" outside the corporate enterprise, and, therefore, the vessels are not "export property." But nothing of substance has changed between the two-contract system and the time charter system: end-users continue to pay for and receive both a support vessel and the necessary operating services. This is clear from the contracts themselves. Evidence of time charters presented to the Court establishes that charterers pay between $2,000 and $3,000 per day for the vessels for contract durations up to two years. Charterers use the vessels for offshore work including "[f]ire fighting assistance," "[s]upply of all drilling, production and construction materials," or, in some cases, simply "[s]upport of charterer's lawful operations and always within the safe operating capabilities of the vessel." The Court finds it implausible that a purported service provider would enter into multiple-year "service contracts" containing preset price terms when the nature of the services is left as indeterminate as any task "within the safe operating capabilities of the vessel." In reality, the time charters reflect commercial elements of both a lease and a service agreement. Furthermore, because Tidewater segregates the lease income from the service income under the time charters, Tidewater is, as a matter of law, entitled to FSC benefits on the lease income as claimed.

Accordingly, because there is no question of law or fact that Tidewater's support vessels are export property under 28 U.S.C. § 927(a), or that Tidewater is entitled to FSC treatment on the lease portion of the income from time charters, the plaintiffs' motion for summary judgment is GRANTED and the government's motion for summary judgment is DENIED. In addition, the government's motion to dismiss Tidewater's tax refund claims related to the 1998 tax year is DENIED.

New Orleans, Louisiana, October 17, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE